## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COUMBIA

IN RE: SUBPOENA TO GLENN LAW

MOBILE MICROMEDIA SOLUTIONS, LLC,

       **Plaintiff,**

**v.**

**NISSAN NORTH AMERICA, INC.,**

       **Defendant.**

**Misc. Action Case File No.:  1:07-mc-00566**

**(Civil Action File No.:  5:05-cv-230 (E. D. Tex.))**

## MOBILE MICROMEDIA SOLUTIONS' RESPONSE MEMORANDUM IN OPPOSITION TO GLENN LAW'S MOTION TO QUASH SUBPOENA FOR DEPOSITION

COMES NOW, Mobile Micromedia Solutions, LLC ("MMS"), Plaintiff in the underlying Civil Action File No. 5:05-cv-230 (E. D. Tx.) ("the Nissan case"), and hereby files its response in opposition to Glenn Law's ("Law") motion to quash the December 6, 2007, subpoena issued by MMS, respectfully showing this Honorable Court that Law's motion should be denied, as follows:

## I.    INTRODUCTION

After the close of fact discovery in the above-referenced case pending in the U. S. District Court for the Eastern District of Texas ("the Texas case"), Defendant Nissan North America, Inc. ("Nissan") identified Law as the author of a legal opinion on which Nissan is attempting to rely in an effort to escape a finding of willful infringement of U. S. Patent No.

5,420,931 ("the '931 patent"). In fact, prior to issuance of the subpoena on December 6, 2007, Nissan agreed to make Law available for deposition, and the parties even agreed on the December 21 date and Washington, D. C., location for the deposition. However, as the January 14, 2007, trial date approached, Nissan reneged on its agreement to make Law available for deposition and, instead, orchestrated the instant opposition to the deposition subpoena.[1] At present, Judge Folsom, the presiding judge in the underlying case, is taking up Nissan's motion for a protective order in the underlying case, which is addressing the same issues raised by the instant motion to quash. *See* Order (J. Folsom), attached hereto as Exhibit 1, pp. 4-5. MMS expects that Judge Folsom will deny that motion and order the instant discovery of Nissan's opinion counsel to take place.

In his memorandum in support of the motion to quash, Law fundamentally misconstrues the scheduling order and related events in the case, misrepresents the sequence and timing of discovery and disclosures in the case, and conveniently ignores the substantive requirements of the Texas court's several rulings against Nissan on its withholding of relevant opinion-related discovery and misplaced assertions of privilege. The court in the underlying case has twice issued orders compelling Nissan to promptly produce opinion-related documents and correspondence, and has further held that by relying on Law's opinion of non-infringement, Nissan has waived any otherwise applicable attorney-client privilege as to the subject matter of infringement and non-infringement opinions. *See* Ex. 1; Order (Mag. J. Craven), attached hereto as Exhibit 2.

---

[1] Prior to filing the instant motion to quash, counsel for Law failed to discuss the anticipated motion with counsel for MMS, either in person or by telephone, in a good faith effort to narrow or resolve Law's surprise decision to refuse to appear for his previously agreed and scheduled deposition. Accordingly, Law's motion to quash contains no statement that the required discussion occurred, because Law's counsel did not so confer, in violation of this Court's Local Civil Rule 7.0(m).

Nevertheless, Law proffers two bases for his motion to quash, alleging that (1) the subpoena is "untimely" and (2) the subpoena seeks "privileged" material.  However, the Texas court's scheduling orders, Nissan's post-fact-discovery disclosure of its intent to rely on Law's opinions at trial and very recent and ongoing production of relevant documents relating to the materials reviews and communications had relating to the opinion of counsel, as well as the Texas court's latest orders compelling Nissan to produce further documents—including Law's own documents—make clear that the deposition subpoena is neither untimely nor subject to assertions of any privilege that would insulate Law from deposition on the subject matter of his non-infringement opinion.

## II.    FACTS

Law acknowledges that fact discovery in the Nissan case closed on <u>April 30, 2007</u>.  In addition, Law confirms that despite the April 30 discovery deadline Nissan did not disclose to MMS Law's identity or his non-infringement opinion rendered to Nissan until after the close of fact discovery, on <u>July 13, 2007</u>.  *See* Law Memorandum, Ex. 3.  Even though Nissan produced Law's actual "formalized" opinion on July 13, Law did not produce any relevant documents related to the subject matter of his opinion until August 23, 2007.  *See* Ex. 1, p. 2; Ex. 2, p. 8.  Notwithstanding Nissan's disclosure of Law's opinion and <u>some</u> related documents two and a half months after the fact discovery cutoff, Nissan and Law additionally and collectively withheld hundreds of other relevant documents—including documents and communications of Law—under the assertions of attorney-client privilege and alleged joint defense privilege.  *See* Law Memorandum, Ex. 3.  Despite numerous efforts by MMS to obtain these additional documents, as to which any privilege was waived by Nissan's disclosure of Law's opinion, Nissan and Law continued to refuse to produce additional documents admittedly in its

possession.  More recently, as the following paragraph shows, Nissan has been ordered to produce these additional documents.

Nissan's and Law's continued delays and refusals to produce the remaining opinion-related documents forced MMS to file a motion to the Texas court to issue an order compelling Nissan to produce all opinion-related documents pertaining to the subject matter of Nissan's claim that it does not infringe the '931 patent.  MMS filed its motion to compel on September 10, 2007.  On October 23, 2007, the Texas court held a hearing on MMS's motion to compel the additional Nissan and Law opinion-related documents.  On November 14, 2007, the Texas court granted MMS's motion in part, finding that Nissan had waived any claims of attorney-client and joint-defense privilege regarding the issue of Nissan's infringement of the '931 patent, and required Nissan to produce within 20 days the additional opinion-related documents up until that point withheld by Nissan.  *See* Law Memo., Ex. 4, pp. 10-11.[2]

***The very next day***, MMS requested the deposition of Law so that MMS could examine Law on the non-infringement opinion and related documents to ensure that MMS obtained fair notice of the entirety and bases for Law's non-infringement opinion and Nissan's willfulness defense.  *See* November 15, 2007, correspondence from P. Peden (counsel for MMS) to counsel for Nissan, attached hereto as Exhibit 3.  MMS requested that the deposition of Law occur "approximately a week after receiving the documents that the Court ordered Nissan to produce." *Id*.  Less than a week later, MMS, again, requested the deposition of Law.  *See* November 21, 2007, correspondence from P. Peden to counsel for Nissan, attached hereto as Exhibit 4.

On December 4, 2007, Nissan purported to comply with the court's order by producing

---

[2] In an effort to pursue Nissan's production of all opinion-related documents from Nissan and Law, on November 29, 2007, MMS filed a motion requesting reconsideration of the portion of the Texas court's grant of the motion to compel insofar as it contained time period limitations on the additional opinion-related documents ordered to be produced by Nissan.  The Texas court held a hearing on the motion for reconsideration on December 19, 2007.

additional internal Nissan documents, as well as additional Law documents and communications regarding the subject matter of infringement.  *See* December 4, 2007, correspondence from J. Caracappa to N. Patton, attached hereto as Exhibit 5.

Anticipating that Nissan would fully comply with these orders, MMS issued a subpoena to Mr. Law on December 6 to take his deposition on the subject matter of his opinion.  *See* Law Memo., Ex. 1.  Nissan and MMS further discussed the deposition and having Law appear for deposition on December 21, 2007 and a Nissan Rule 30(b)(6) representative for deposition on January 4, 2008.  MMS agreed to those deposition dates (the only dates considered by Nissan) on the condition that the deposition of the Nissan representative be taken in Texarkana, Texas. Nissan had agreed to the subpoena's date for Law's deposition on December 21, 2007, before Law filed his instant motion.  *See* December 15, 2007, correspondence to N. Patton, attached hereto as Exhibit 7.

Despite the Texas court's prior order, Nissan and Law continued to withhold pertinent documents behind claims of privilege and/or irrelevancy.  On December 27, 2007, the Texas court granted MMS's motion for reconsideration as it pertained to Nissan's obligation to produce additional Nissan and Law documents relating to the subject matter of infringement, ordering: "To the extent that there are any infringement-related documents that Nissan has failed to produce, it is hereby ordered to produce them."  *See* Ex. 1, p. 4.  Nissan has at least partially complied with the most recent order of the Court just two days ago on December 31, 2007, by producing additional, previously withheld opinion-related documents.  *See* December 31, 2007, correspondence to N. Patton, attached hereto as Exhibit 6.

However, and in spite of Nissan's previous agreement on the deposition scheduling, with

trial rapidly approaching, Nissan and Mr. Law have now adopted a dilatory strategy in the hope that MMS will run out of time prior to trial and will forego such an important deposition, thereby increasing the likelihood that MMS will not be prepared to cross-examine Mr. Law effectively before the jury at trial.

## III.     ARGUMENT AND CITATION OF AUTHORITY

MMS has noticed the deposition of Law so that it has fair notice of Nissan's advice-of-counsel defense to the claims of willful infringement in the Nissan case.  Without this crucial discovery, MMS is unfairly prejudiced on the issue of Nissan's reliance on the infringement opinion and the merits, bases, and analysis considered by Law in formulating his opinion. Neither of the arguments proffered by Law have any merit, and this Court should deny Law's attempt to shield himself from discovery on his opinion – an opinion that Nissan intends to wield as a sword at trial.

### A.     The Law Subpoena Does Not Seek "Privileged Material," Because Nissan Has Already Waived Any Privilege That Might Have Existed Between Nissan and Law on the Subject Matter of Whether Nissan Infringes the '931 Patent.

Law's motion to quash makes the blanket statement that the subpoena should be quashed because it "will require disclosure of privileged information."  However, Law blatantly ignores the orders of the Texas court holding that "[w]hen a defendant asserts an advice-of-counsel defense, the defendant waives privilege as to both communicated work product and attorney-client communications regarding the subject matter of the opinion 'because such documents are evidence of a relevant and non-privileged fact, namely what the defendant knew about infringement.'"  *See* Ex. 2, p. 4 (quoting *Autobytel, Inc. v. Dealix Corp.*, 455 F.Supp.2d 569, 571-72 (E. D. Tex. 2006).  *See also, In re Echostar Comm's Corp.*, 448 F.3d 1294, 1298 (Fed. Cir.

6

2006) (advice of counsel defense triggers a broad waiver extending to all counsel communications and communicated work product relating to the subject matter of the opinion).

As the party asserting the protection of a privilege in an attempt to avoid his duly noticed deposition, Law bears the bears the burden of demonstrating facts sufficient to establish the privilege's applicability, here. *See, e.g., United States v. Legal Servs. for N.Y. City,* 249 F.3d 1077, 1081 (D. C. Cir. 2001); *In re Sealed Case,* 148 F.3d 1073, 1076 (D. C. Cir. 1998); *see also Schreiber v. Soc'y for Sav. Bancorp, Inc.,* 11 F.3d 217, 220 (D. C. Cir. 1993).  In addition:

> A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material ***must***:
>
> (i) ***expressly*** make the claim; and
>
> (ii) ***describe*** the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed.R.Civ.P. 45(d)(2)(A) (emphasis added).  However, in Law's two-paragraph briefing on the alleged applicability of a protective privilege, Law sets forth no particular blanket privilege that he claims shields him from deposition on matters that he may testify to at trial and which have already been disclosed, at least in substantial part due to the production of his written opinion and certain correspondence related thereto.  *See* Law Memo., p. 5.  Likewise, Law fails to identify a single example of what subject matter in his deposition would require the "disclosure of privileged information."[3]  In fact, the entirely of Law's claim that the deposition subpoena

---

[3]  The Texas court has already prescribed the scope of permissible discovery from Nissan and Law on the subject matters for which privilege has been waived, including Law's non-infringement opinion and Nissan's advice-of-counsel defense.  The court has made clear that this scope is limited to Nissan's in-house investigation of the '931 Patent, the opinion of counsel upon which it relies to defend against charges of willful infringement, documentation regarding the guidelines of the patent investigation, communications with in-house counsel and outside counsel regarding the guidelines, accused systems incorporated into Nissan vehicles, details of the function of the accused Nissan systems and components provided by suppliers, and the communications between Law and Nissan relating to issues of infringement/non-infringement.  *See* Ex. 2, pp. 13-15.  Consequently, it has already been decided that

should be quashed consists of one non-specific sentence, to wit: "Mr. Law is outside counsel for Nissan and his deposition will require disclosure of privileged information." *Id.*

Law wholly ignores the fact that the Texas court has already ruled that no attorney-client privilege applies to Law in his capacity as opinion counsel for Nissan on the subject of infringement. He similarly ignores the Texas court's ruling that any attorney-client privilege that might have otherwise existed as to his infringement investigation and opinion for Nissan has been overtly waived by the "client" Nissan. The section of Rule 45 upon which Law relies for his "privilege" argument clearly states that the court by which a subpoena was issued shall quash or modify the subpoena if it "… requires disclosure of privileged or other protected matter, ***if no exception or waiver applies***[.]" *See* Fed.R.Civ.P. 45(c)(3)(A)(iii) (emphasis added). Here, the Texas court has already ruled (twice) that any attorney-client privilege and work product protection relating to Law's infringement opinion work for Nissan has been affirmatively waived by Nissan. Therefore, this Court has no basis under Rule 45 to quash MMS's subpoena to Law.

Plainly, there is no legitimate "privilege" basis on which this Court should quash the deposition subpoena for Law's deposition. It is elementary that the deposition-discovery rules are to be accorded liberal treatment. *Continental Distilling Corp. v. Humphrey*, 17 F.R.D. 237, 241 (D.D.C. 1955), citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Furthermore, even if there remained deposition subject matter for which Nissan has not already waived privilege, and Law believed that a question in the deposition was not appropriately directed to the subject matter of the waiver, Law could impose objections to any such questions at during the deposition. *See Humphrey*, 17 F.R.D. at 241. MMS is entitled to take Law's deposition to ask

---

MMS cannot inquire into other of Law's matters that might invoke attorney-client privilege or work product protection.

him about the infringement issue, including his documents produced, his role in Nissan's in-house infringement investigation, his review of other opinions provided to Nissan, and other matters that bear on the credibility, veracity, objectivity and the thoroughness of his opinion.

**B.     Law's Argument That the MMS Subpoena is "Untimely" Because Fact Discovery Has Ended Is Not Properly Before This Court And It Ignores Both the Texas Court's Scheduling Orders and Nissan's Long Delays in Producing Relevant Opinion-Related Documents Until Long After Fact Discovery.**

First, Law's conclusory assertion that MMS's subpoena for his deposition is "untimely" is an issue that is not properly before this Court. Indeed, Judge Folsom has expressly taken the timing issue — raised by Nissan's motion for protective order filed in Texas — under advisement. Thus, this Court should decline to consider this issue. Even if the Court were inclined to consider the timing issue, it should defer ruling until Judge Folsom addresses the matter.

Second, Law's timing argument is undermined by the tortured history of Nissan's and Law's production—and obstruction and delay of production—of willfulness disclosures and documents for many months after the close of fact discovery in the Texas case. For example, Nissan's first willfulness disclosures and Law's non-infringement opinion were not served on MMS until two and a half months <u>after</u> the close of fact discovery. Law did not produce his supporting documentation for his opinion until another month and a half had passed. Additionally, even with the preliminary production of opinion-related documents by Nissan and Law, their obfuscatory conduct required MMS to file a motion to compel, file a motion for reconsideration, and argue at two hearings on the motions to obtain the Texas court's assistance in compelling Nissan and Law to properly supplement and complete their production of relevant infringement-related documents and communications.

None of the cases cited in Law's memorandum report the Court's quashing of a deposition subpoena where the defendant delays for months beyond the close of fact discovery

before properly and completely producing relevant documents that will be the subject of examination. Indeed, MMS is not clairvoyant. MMS did not know of Law during fact discovery, nor had Nissan waived privilege during fact discovery. MMS could not have taken Law's deposition during fact discovery because Nissan waited over two months after the close of fact discovery to make his identity and existence known to MMS and to produce his relevant documents required by Local Rule 3-7 of the Texas court and the Texas court's scheduling orders. While Law alleges that MMS is attempting to "skirt" the Texas court's scheduling order, he fails to explain how MMS could have known of—much less effectively deposed—Law before Nissan disclosed the existence of Mr. Law and his opinion of counsel after the close of fact discovery in July 2007, and before he and Nissan produced relevant documentation supporting the opinion-of-counsel defense near the end of December 2007.

Third, MMS did not "unreasonably delay" requesting Law's deposition. MMS's motion to compel the production of all the opinion-related documents specifically requested the deposition of Law. In fact, the very next day after the Texas court's first order compelling Nissan to produce all of its and Law's documents pertaining to his infringement opinion and related investigation, MMS requested Law's deposition. *See* Ex. 3. Less, than a week later, MMS renewed its request. *See* Ex. 4. These requests led to Nissan's agreement to make Law available for deposition, and the parties endeavored to agree on a date certain and location for the deposition. Then, after travel and deposition arrangements had already been made, Nissan reneged on its agreement. Nissan's *a priori* agreement to produce Law for deposition is an acknowledgment that MMS is entitled to this deposition and that neither Law nor Nissan has a valid basis upon which to now object.

MMS acted with all reasonable diligence to take the deposition of Law and relied on Nissan's express agreement to comply with the agreed deposition arrangements. Indeed, given

the rapidly approaching trial, the dilatory nature of Nissan's and Law's conduct is self-evident.

**C.** **Law's Argument—That Because Nissan and Law Have Produced Documents Law Should Be Immune from Deposition Cross-Examination—Violates the Basic Tenets of Discovery Under the Federal Rules of Civil Procedure.**

Law's motion memorandum asserts that "[t]o the extent that MMS seeks to depose Mr. Law regarding non-infringement of the '931 patent," such deposition would be "unnecessary and duplicative" simply because Nissan and Law have produced relevant documents pertaining to the non-infringement opinion. *See* Law Memo., p. 6. Law argues that because Nissan and Law have produced some documents, MMS is not entitled to Law's <u>deposition testimony</u>. However, as widely understood by courts and litigants—and likely understood by Law, an attorney, himself— a party is not limited to one form of discovery. MMS, like any other litigant, is entitled to seek documents, propound written discovery, and to take depositions to seek the information needed to prove its case. It is hard to imagine any Court holding that simply because some documents regarding a subject have been produced, a party is not entitled to take a deposition regarding that topic.[4]

---

[4]   In fact, were Law's incredulous argument accepted, Nissan would not have needed to produce any deponents in the Texas case so long as some documents relating to any putative deponent's knowledge were produced.

IV.    **CONCLUSION**

For the forgoing reasons, Law's motion to quash should be denied, and he should be ordered to appear for his duly noticed and subpoenaed deposition, immediately.

This 2nd day of January.

**Respectfully submitted,**

**ARENT FOX LLP**

**By:  James H. Hulme (#323014)**

**1050 Connecticut Ave., N.W.**
**Washington, D.C. 20036**
**Telephone:  202/857-6000**
**Facsimile:  202/857-6395**

**Counsel for Mobile Micromedia Solutions, LLC**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COUMBIA

IN RE: SUBPOENA TO GLENN LAW

---

MOBILE MICROMEDIA SOLUTIONS,
LLC,

      Plaintiff,

v.

NISSAN NORTH AMERICA, INC.,

      Defendant.

**Misc. Action Case File No.:  1:07-mc-00566**

**(Civil Action File No.:  5:05-cv-230 (E. D. Tex.))**

## ORDER DENYING GLENN LAW'S
## MOTION TO QUASH SUBPOENA FOR DEPOSITION

Upon consideration of Glenn Law's ("Law") motion to quash the December 6, 2007,

subpoena issued by Mobile Micromedia Solutions, LLC ("MMS"), Plaintiff in the underlying

Civil Action File No. 5:05-cv-230 (E. D. Tx.) ("the Nissan case"), the response filed by MMS,

and the Court being otherwise advised, it is hereby, this _____ day of January, 2008

ORDERED, that Law's motion to quash be, and the same hereby is, DENIED.

_____
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| MOBILE MICROMEDIA SOLUTIONS, LLC, | § § § | |
| Plaintiff, | § § | |
| | § | CIVIL ACTION NO. 5:05-CV-230 |
| v. | § § | |
| NISSAN NORTH AMERICA INC | § § | |
| Defendant. | § § § | |

## ORDER

Currently before the Court is a Motion for Expedited Review and Motion Seeking Reconsideration of Magistrate Judge Craven's November 14th Order filed by Plaintiff Mobile Micromedia Solutions LLC ("MMS"). Dkt. No. 291. Also before the Court is Defendant Nissan North America, Inc.'s ("Nissan") response (Dkt. No. 297) and MMS's reply (Dkt. No. 299). Having reviewed Judge Craven's Order (Dkt. No. 289) and the relevant briefing and oral arguments held on December 18, 2007, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** MMS's Motion for Expedited Review (Dkt. No. 291).

## I. PROCEDURAL BACKGROUND

On April 7, 2003, MMS's lead counsel, Steve Hill, sent a letter to Nissan alleging infringement of U.S. Patent No. 5,420,931 (the "'931 Patent") and its continuation-in-part, U.S. Patent No. 5,722,069 (the "'069 Patent"). Dkt. No. 289 at 2. Nissan investigated the claims in the '931 Patent and '069 Patent and received an opinion of counsel from Foley & Lardner dated March 2004 concerning the non-infringement of the '931 Patent. Dkt. No. 289 at 2. MMS filed its complaint against Nissan on December 28, 2005 but only asserted the '931 Patent. Dkt. No. 1

1

at 2. Nissan received a second opinion, dated July 2007, that memorialized the March 2004 opinion. Dkt. No. 289 at 2. MMS filed a motion to compel privilege log documents written by Glenn Law of Foley & Lardner regarding the "subject matter" of Mr. Law's opinion. *Id.* MMS also sought a November 8, 2004 Panasonic opinion and related documents as well an unredacted version of a January 12, 2005 Clarion opinion. *Id.* at 3.

Judge Craven's Order noted that MMS received the Foley & Lardner opinion regarding non-infringement and related documents on August 23, 2007. Dkt. No. 289 at 8. In addition to this, MMS sought all Nissan documents regarding willful infringement, including:

> (1) documents regarding Nissan's in-house investigation of the '931 patent; (2) all communications and work product exchange with Mr. Law; (3) all other opinions of counsel; and (4) all communications and communicated work product exchange with Nissan's alleged common interest defendants.

*Id.* at 9.

Judge Craven concluded that "[o]ther than the Panasonic and Clarion opinions, Nissan has waived privilege related to infringement" which "extends to all communication opinion on infringement, but does not include any attorney work product or opinions that have not been communicated to Nissan." *Id.* Relying on *Autobytel Inc. v. Dealix Corp.*, 455 F. Supp. 2d 569, 576 (E.D. Tex. 2006), Judge Craven determined that even assuming Nissan had a common legal interest privilege with its suppliers, Panasonic and Clarion, that privilege had also been waived. *Id.* at 10-11. Judge Craven ordered Nissan to produce the Panasonic and Clarion opinions and documents limited to "within ninety days before or after the date on which Nissan received the opinions." *Id.* at 11.

Judge Craven, relying on *Autobytel*'s interpretation of *In re Echostar Commc'ns Corp.*,

2

448 F.3d 1294, 1304 (Fed. Cir. 2006), determined that waiver of privilege is applicable to the particular nature of the advice of counsel, which in this case is limited only to non-infringement. Dkt. No. 289 at 12-14 (citing *Autobytel*, 455 F. Supp. 2d at 575).

Judge Craven also granted MMS's motion to exclude Nissan's production of documents labeled "CLA00001-CLA001712" and "013767-013843." *Id.* at 16-17. Judge Craven denied MMS's motion to exclude "PAN001850-00249", stating that there was time to cure any prejudice and MMS was also allowed to supplement its expert reports utilizing those documents. *Id.* at 18-19.

## II.  APPLICABLE LAW

MMS appeals the decisions of United States Magistrate Judge Craven pursuant to Federal Rule of Civil Procedure 72(a), which provides that the Court shall consider objections and shall modify or set aside any portion of a magistrate judge's order on a nondispositive matter found to be "clearly erroneous or contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A). The Court should overturn a magistrate judge's ruling only when "left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993).

## III.  ANALYSIS

The Court determines that Judge Craven's time limitation of production related to the Panasonic and Clarion infringement-related documents was clearly erroneous.  Judge Craven's Order relied heavily on *Autobytel* in determining the limitations.  However, in *Autobytel* the plaintiff had agreed to the ninety day limitation:

Autobytel stated at oral argument that production of Dealix-Cobalt

3

communications dated within ninety days of the non-infringement opinion is satisfactory and has therefore waived production of documents outside this time frame.

*Autobytel*, 455 F. Supp. 2d at 576.

Unlike the plaintiff in *Autobytel*, MMS has not waived production to a specific time period. The Court determines that MMS is entitled to production of any infringement-related documents from the date of the April 7, 2003 letter from Hill to Nissan to July 2007 when Nissan memorialized its March 2004 opinion. Therefore, the Court orders the production of documents beyond the 180-day period to include the time period between April 7, 2003 to July 2007.

MMS states that Judge Craven's Order failed to address MMS's requested relief. Dkt. No. 291 at 13. In particular, MMS argues that Judge Craven's Order may be read to allow Nissan to withhold infringement related documents including Nissan documents with Nissan affiliate companies and other opinions of counsel with other companies participating in the common interest defense, such as Visteon and Zandiant. *Id.* at 14. Nissan responds that Nissan has produced all in-house documents relating to the subject matter of the opinion of counsel regarding willful infringement and all opinions of counsel. Dkt. No. 297 at 10. Nissan avers that it does not have any other opinions related to the non-infringement of the '931 Patent. *Id.* at 10. To the extent that there are any infringement-related documents that Nissan has failed to produce, it is hereby ordered to produce them to MMS.

MMS further requests "time to file a responsive expert report on willfulness" and "leave to depose Nissan's opinion counsel, Mr. Law." Dkt. No. 291. MMS originally requested this relief in its motion to compel. Dkt. No. 159 at 6. This relief was not addressed by Judge Craven's Order; however, the Court hereby grants this relief and will allow MMS an extension of

time to file a responsive expert report. Regarding the deposition of Mr. Law, this issue was not addressed by Judge Craven's Order and as Nissan noted in its responsive brief, MMS has already served its notices. Dkt. No. 297 at 10. This issue will not be addressed in this Order; rather the Court will address this issue in Nissan's Motion for Protective Order Prohibiting the Taking of Deposition Testimony Pursuant to Plaintiff's Notice of Rule 30(b)(6) Deposition of December 6, 2007. Dkt. No. 301.

The Court determines that the balance of Magistrate Judge Craven's November 14, 2007 Order is not clearly erroneous or contrary to law. The Court determines that Judge Craven's Order appropriately limited the subject-matter waiver to the '931 Patent. The waiver appropriately excluded documents relating to invalidity and all documents related to the '069 Patent, including infringement-related documents related to the '069 Patent.

The Court also affirms Judge Craven's conclusions regarding the Motion to Exclude Materials Disclosed Out of Time. In particular, Judge Craven's Order that MMS will not be prejudiced by the introduction of the Panasonic documents is not clearly erroneous or contrary to law.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS-IN-PART** MMS's Motion to Reconsider Magistrate Judge Craven's November 14th Order. Accordingly, it is

**ORDERED** that, to the extent it has not already so provided, Nissan will produce the Panasonic and Clarion opinions and documents related to the opinions between April 7, 2003 to July 2007 by **December 31, 2007 at 5 p.m.** Nissan may redact information that is either unrelated to infringement of the '931 Patent or that represents uncommunicated work product. It

5

is further

ORDERED that to the extent it has not done so, Nissan will provide documents related to infringement of the '931 Patent, including documents exchanged with Nissan affiliates, including the Nissan Technical Center North America, and any opinions of counsel relied upon by Nissan by **December 31, 2007 at 5 p.m.**  It is further

ORDERED that MMS will provide its supplemental expert report on willfulness by **January 3, 2008 at 5 p.m.**  It is further

ORDERED that Nissan will provide its responsive expert report on willfulness within two (2) days of MMS's filing of its supplemental expert report on willfulness.

The Court **DENIES-IN-PART** MMS's request to order production of documents related to the '069 Patent or invalidity.

The Court also **DENIES-IN-PART** MMS's request to exclude the Panasonic documents.

The Court further declines to address the request for deposition of Mr. Law as it will be addressed in Nissan's Motion (Dkt. No. 301).

It is so **ORDERED.**


**SIGNED this 27th day of December, 2007.**


**DAVID FOLSOM**
**UNITED STATES DISTRICT JUDGE**

## IN THE UNITED STATES DISTRICT COURT
## OF THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| **MOBILE MICROMEDIA SOLUTIONS** | § | |
| **LLC, a Texas limited liability company** | § | |
| | § | |
| **V.** | § | **No.  5:05CV230** |
| | § | |
| **NISSAN NORTH AMERICA, INC., a** | § | |
| **foreign corporation** | § | |

## ORDER

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the

Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, Plaintiff's

Motion to Compel Privilege Log Documents (Docket Entry # 159) and Plaintiff's Motion to Exclude

Materials Disclosed Out of Time (Docket Entry # 161) were referred to the Honorable Caroline M.

Craven for the purposes of hearing and determining said motions.  The Court, having reviewed the

relevant briefing and hearing arguments of counsel,[1] issues the following Order.

### I.  FACTUAL BACKGROUND

On December 28, 2005, Mobile Micromedia Solutions, LLC ("Mobile") filed a complaint

against Nissan North America, Inc. ("Nissan") for infringement of U.S. Patent No. 5,420,931 ("the

'931 patent").  Plaintiff contends that Defendant has in the past and presently continues to infringe,

contribute to infringement, and/or induce infringement of the '931 patent by making, using, selling

and/or offering to sell, in this judicial district and elsewhere in the United States, products and

services which alone and/or in use are covered by at least one claim of the '931 patent.

---

[1] The Court conducted a hearing on Mobile's motions on October 23, 2007.

## II.  PROCEDURAL BACKGROUND[2]

On April 7, 2003, Mobile's lead counsel, Steve Hill, sent a letter to Nissan alleging that Nissan infringes the '931 patent and U.S. Patent No. 5,722,069 ("the '069 patent").  Hill, representing the inventor Irah Donner, alleged that any Nissan vehicles incorporating an integrated video entertainment system with a DVD player would infringe these patents.  From 2003 to December 28, 2005, Nissan reviewed the claims in both the '931 and '069 patents.

On July 13, 2007, Nissan produced two opinions of counsel.  The first opinion, dated March 2004 and written by Foley & Lardner, related to the non-infringement of certain claims of the '931 patent.  The second opinion, dated July 2007, memorialized the earlier opinion and discussed the reasons and basis for the March 2004 opinion.  Nissan asserts it produced all documents within its possession, custody, and control relating to the subject matter of these opinions.  On the same day, Nissan produced a privilege log, including attorney-client communications and attorney work products unrelated to the '931 patent, unrelated to the claims at issue in the '931 patent, and unrelated to Mobile's claim of literal infringement. Nissan represents it has produced all documents relating to Mobile's claim that the accused products literally infringe claims 13-16 of the '931 patent.

## III.  MOTION TO COMPEL PRIVILEGE LOG DOCUMENTS

### A.    Mobile's assertions

In its first motion, Mobile asserts Nissan produced a formal opinion of counsel written by Glenn Law of Foley & Lardner, but Nissan refuses to produce documents regarding the subject matter of Mr. Law's opinion.  According to Mobile, documents regarding Nissan's pre-suit in-house investigation and its subsequent decision not to license the '931 patent are the type of documents

---

[2] The Court's background is taken from Nissan's response brief.

2

needed to demonstrate the objectively reckless nature of Nissan's ongoing willful infringement. Mobile asserts Nissan must also produce all other opinions of counsel and all documents concerning those opinions. Specifically, Mobile seeks the November 8, 2004 Panasonic opinion and related documents, asserting Nissan admitted that it has the Panasonic opinion in its possession and that the opinion is related to the subject matter of the Foley & Lardner opinion provided to both Nissan and Mr. Law. Mobile also seeks an unredacted version of the January 12, 2005 Clarion opinion which was reviewed and commented on by Nissan.

**B.    Nissan's response**

According to Nissan, Mobile is not entitled to documents which do not relate to claims 13-16 of the '931 patent; documents relating to the '069 patent remain privileged and are not relevant to any issue in this case. Nissan further asserts Mobile is not entitled to documents which do not relate to the accused Nissan products. Although Nissan chose to waive only communications and communicated work produced regarding non-infringement, Nissan contends it did not waive privilege with respect to unenforceability, invalidity, and other defenses when it relied on an opinion of counsel relating to non-infringement.

Finally, Nissan asserts the common interest doctrine protects Nissan's communications regarding non-infringement with its suppliers, Panasonic and Clarion. According to Nissan, it cannot waive the privileges of other parties with whom it shares a common legal interest.

**C.    Applicable law**

The law of the Federal Circuit governs discovery disputes over the extent to which a party waives privilege when it asserts the advice of counsel defense against a charge of willful patent infringement. *In re Echostar Comm's Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006). A party

withholding relevant documents based on a privilege exemption bears the burden of demonstrating its applicability. *See In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). A privilege, even if validly asserted, may be waived.

"Since willfulness is a question of the accused infringer's state of mind, inquiries into willfulness focus on whether the accused infringer's beliefs and actions were reasonable." *Autobytel, Inc. v. Dealix Corp.*, 455 F.Supp.2d 569, 571-72 (E.D. Tex. 2006). "The reasonableness of an infringer's reliance on advice of counsel is an important factor in determining whether infringement was willful." *Id.* at 572. When a defendant asserts an advice-of-counsel defense, the defendant waives privilege as to both communicated work product and attorney-client communications regarding the subject matter of the opinion "because such documents are evidence of a relevant and non-privileged fact, namely what the defendant knew about infringement." *Id.*

In *In re Echostar*, the Federal Circuit explained the scope of waiver that accompanies a defendant's reliance on an advice of counsel defense. *Echostar*, 448 F.3d at 1301-02. There, Echostar sought to prevent the disclosure of an opinion of counsel that it had commissioned from an outside law firm but had not relied upon. Instead, Echostar relied on the work performed by its in-house counsel. Echostar argued that an internal investigation constituted a different subject matter than that contained in the outside opinion. *Id.* at 1299. The Federal Circuit disagreed, finding that both were legal opinions concerning the same "subject matter" and were both therefore discoverable. *Id.*

Next, the Federal Circuit considered the types of waivers that were implicated by Echostar's reliance on an advice of counsel defense. The court held that the scope of the waiver depends upon the privilege asserted. The court treated the attorney-client communication waiver and the attorney-

work product waiver separately and held that work product waiver is not as broad as the attorney-client privilege waiver.  *Id.* at 1302.  The court found that an advice of counsel defense triggers a broad waiver extending to all counsel[3] communications and communicated work product relating to the subject matter of the opinion.  However, the court held that waiver did not extend to work product not communicated to an accused infringer.  *Id.* at 1302.  The Federal Circuit recognized that redaction might be required to protect information outside the scope of the waiver.  *Id.* at 1304 (stating that parties should take special care to redact uncommunicated work product from documents which reference an attorney-client communication within the scope of the waiver).

Courts applying *Echostar's* "subject matter" waiver have reached different results on the issue of whether waiver of an opinion on one defense (i.e. non-infringement) also triggers a waiver of an opinion of other defenses (i.e. invalidity and unenforceability).  In *Autobytel, Inc. v. Dealix Corp.*, 455 F.Supp.2d 569 (E.D. Tex. 2006), the defendant relied on a non-infringement opinion concerning the patent-in-suit.  *Id.* at 571.  The defendant produced to the plaintiff the non-infringement opinion and all documents related to the opinion that were in opinion counsel's possession, but the defendant's trial counsel first redacted all work product that had been communicated to the defendant.  *Id.*  The defendant did not produce a privilege log in accordance with the court's Local Patent Rule 3-8(b).  *Id.*

The plaintiff asserted the defendant had waived privilege regarding communications and documents relating to non-infringement in the defendant's possession, including communications and work product from opinion counsel; communications between the defendant and Cobalt, the

---

[3] "*Echostar* did not consider waiver of the advice of counsel defense as it relates to trial counsel."  *In re Seagate*, 497 F.3d 1360, 1370 (Fed. Cir. 2007).

entity that acquired the defendant; and opinions or correspondence concerning the non-infringement opinion or concerning the patent-in-suit from the defendant's counsel during its merger with Cobalt. *Id.* The plaintiff argued, among other things, that the defendant's reliance on a non-infringement opinion waived communications regarding non-infringement, enforceability, and validity. *Id.* at 574.

The court held that when an advice-of-counsel defense of only non-infringement is asserted, a waiver as to unenforceability, validity, and infringement is not mandated. *Id.* at 575. The scope of subject matter waiver is limited to discovery related to whether a defendant's reliance on an asserted non-infringement opinion was reliable. *Id.* The court noted that "inquiries into the infringer's state of mind not addressed in the underlying opinion are of limited utility in determining whether the infringer's reliance on the underlying opinion is reasonable." *Id.* The court then balanced this limited utility against the policies of the attorney-client and work product privileges. *Id.* The court declined to interpret *Echostar* as requiring a "broad and ultimately unhelpful subject-matter waiver." *Id.* Therefore, the court limited the scope of the subject matter waiver to potential infringement of the patent-in-suit. *Id.*

The court then considered the plaintiff's motion to compel disclosure of communications between the defendant and Cobalt that related to infringement or analysis of the patent-in-suit. The defendant argued that such communications and work product were confidential under the common legal interest doctrine and were not within the scope of the advice-of-counsel waiver. *Id.* at 576. The court found the common legal interest privilege extended to communications between the defendant and Cobalt regarding "common legal issues that were intended to facilitate representation in possible subsequent infringement litigation. . . . However, when [the defendant] asserted the advice-of-counsel defense, it waived the [common legal interest] privilege as to communications or

6

communicated work product related to potential infringement of the 517 patent or related to the non-infringement opinion." *Id.* The court held the plaintiff was entitled to documents and communications between the defendant and Cobalt within ninety days before or after the date on which the defendant received the non-infringement opinion. *Id.*

Recently, the Federal Circuit again addressed the scope of waiver of the attorney-client privilege when an advice-of-counsel defense is asserted. In *In re Seagate*, Seagate relied on three opinion letters in defending against willful infringement. *In re Seagate*, 2007 WL 2358677 (Fed. Cir. 2007). The trial court concluded that Seagate waived the attorney-client privilege for all communications between it and any counsel, "including its trial attorneys and in-house counsel, concerning the subject matter of the opinions, i.e., infringement, invalidity, and enforceability." *Id.* at 1366-67. The trial court also determined that protection of work product communicated to Seagate was waived. *Id.* at 1367.

On appeal, the Federal Circuit confronted the "willfulness scheme and its functional relationship to the attorney-client privilege and work product protection." *Id.* at 1370. Specifically, the court addressed whether waiver resulting from advice of counsel and work product defenses extends to trial counsel. *Id.* In revisiting its willful doctrine, the court overruled the lower threshold for willful infringement set out in *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380 (Fed. Cir. 1983). The Federal Circuit held that proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness. *In re Seagate*, 497 F.3d at 1371. The court also emphasized there is no affirmative obligation to obtain opinion of counsel. *Id.*

The Federal Circuit then turned to the ultimate dispute in the case, the proper scope of discovery and the appropriate scope of waiver of the attorney-client privilege resulting from an

advice of counsel defense asserted in response to a charge of willful infringement. *Id.* at 1371-72. The court concluded that "significantly different functions of trial counsel and opinion counsel advise against extending waiver to trial counsel." *Id.* at 1373. According to the court, it did not adopt an "absolute rule" regarding the scope of the waiver in this context. *Id.* at 1374. In determining what constitutes the "subject matter of a waiver," courts must weigh the circumstances of the disclosure, the nature of the legal advice sought, and the prejudice to the parties. *Id.*

**D.    Discussion**

**1.    Background issues**

In 2003, Mobile contacted Nissan about licensing the '931 patent and the '069 patent. Between 2003 and 2005, Nissan conducted an internal investigation regarding both patents, looking at non-infringement, invalidity, and products not accused in this case. To defend against Mobile's claims of willful infringement, Nissan has relied on an opinion letter written by Foley & Lardner as well as Nissan in-house counsel's pre-suit investigation relating to non-infringement of the '931 patent.

On July 13, 2007, Nissan produced all documents relating to the subject matter (i.e. non-infringement) of the Foley & Lardner opinion (with the exception of the Panasonic non-infringement opinion, documents related to the Panasonic opinion, and an unredacted copy of the Clarion opinion provided to Nissan by Panasonic and Clarion). The same day, Nissan also provided to Mobile all documents relating to the pre-suit investigation relating to non-infringement. On August 23, 2007, Foley & Lardner produced all documents related to the subject matter of the Foley & Lardner opinion (i.e. non-infringement).

In its current motion, Mobile asserts the circumstances of the Foley & Lardner disclosure and

8

the nature of the legal advice sought requires disclosure of all Nissan's willfulness defenses (i.e. invalidity). Mobile seeks all Nissan documents regarding willful infringement, including (1) documents regarding Nissan's in-house investigation of the '931 patent; (2) all communications and work product exchanged with Mr. Law; (3) all other opinions of counsel; and (4) all communications and communicated work product exchanged with Nissan's alleged common interest defendants.

Other than the Panasonic and Clarion opinions, Nissan has waived privilege related to infringement. According to the authority cited above, the waiver extends to all communications opining on infringement, but does not include any attorney work product or opinions that have not been communicated to Nissan. Regarding the Panasonic and Clarion opinions, Nissan argues it shares a common legal interest privilege with its suppliers, Panasonic and Clarion, justifying its withholding from production those documents. The Court first considers whether Nissan can rely upon the common interest defendant to withhold documents regarding infringement.

**2.      Whether Nissan can rely upon a common interest defense to withhold Panasonic and Clarion documents**

Even though Mobile asserts Nissan's infringement expert and opinion of counsel rely on Panasonic's opinion of counsel, Nissan has not produced the Panasonic non-infringement opinion and a few documents that discuss the Panasonic opinion. Clarion also provided Nissan an opinion of counsel. According to Nissan, Clarion's opinion was not thorough enough so Nissan chose not to rely on it. Nissan has produced to Mobile the Clarion opinion in redacted form, redacting issues related to the '069 patent, non-accused products, or issues other than non-infringement.

Mobile asserts it is entitled to copies of both opinions and documents that discuss the opinions. Specifically, Mobile argues Nissan cannot establish the existence of a common legal

interest privilege, and if it could, the privilege has been waived.

The common legal interest doctrine "extends the attorney-client privilege to communications prompted by threatened or actual civil or criminal proceedings and is intended to facilitate representation between potential co-defendants with a common legal interest and their counsel." *Autobytel*, 455 F.Supp.2d at 576. Here, Nissan asserts Panasonic and Clarion supply essential components of Nissan's accused entertainment systems, and such shared product development implicates common legal interests between a supplier and its customer in the face of patent infringement allegations. Although Panasonic, Clarion, and Nissan later formalized their common legal interest by signing joint defense agreements, which appear on Nissan's privilege log, Nissan asserts Nissan and its supplier companies have held a common legal interest since the time period when Mr. Hill accused Nissan of infringing the '931 patent. Specifically, Nissan asserts it worked with its suppliers as part of its in-house investigation.

As urged by Mobile, the Court is not convinced the withheld communications between Nissan and its suppliers were made to facilitate legal representation between Nissan and its suppliers who were *at the time* all pursuing a common legal interest. *See Autobytel*, 455 F.Supp.2d at 576. Mobile asserts Nissan's own documents reveal that at the time Panasonic became involved, Nissan had already conducted its internal investigation, and most of the documents that Nissan is withholding were created before that date.

However, the Court will assume that Nissan and its suppliers were potential co-defendants in Mobile's lawsuit and acted under a threat of imminent litigation by Mobile. Even assuming Nissan and its suppliers had a common interest privilege extending to communications between Nissan and Panasonic and Clarion regarding common legal issues, the Court agrees with Mobile that

10

the privilege has been waived. In *Autobytel*, Judge Davis made clear that when the defendant asserts an advice-of-counsel defense, it waives the common legal interest privilege "as to communications or communicated work product related to potential infringement of the [patent-in-suit] or related to the non-infringement opinion." *Autobytel*, 455 F.Supp.2d at 576.

Nissan asserts the Panasonic and Clarion opinions were provided to Mr. Law after his draft opinion, and thus are not relevant. The formal Foley & Lardner opinion is dated July 12, 2007. Up to that time, Mr. Law was free to alter his opinion. The Panasonic and Clarion opinions of counsel may have contained information from which an objective opinion counsel would have altered his opinion, and Mr. Law's failure to do so is relevant to evaluating his opinion. The Panasonic and Clarion opinions are relevant and discoverable.

Therefore, this portion of Mobile's motion is **GRANTED**. Within twenty days from the date of entry of this Order, Nissan shall produce to Mobile the Panasonic and Clarion opinions and documents related to the opinions. Nissan may redact information that is either unrelated to infringement of the '931 patent, unrelated to the non-infringement opinion, or that represents uncommunicated work product. The waiver is limited to documents within ninety days before or after the date on which Nissan received the Panasonic and Clarion opinions.

### 3. Whether Mobile is entitled to other privileged documents unrelated to non-infringement

The Court now considers whether Mobile is entitled to other privileged documents unrelated to non-infringement, including documents exchanged between Nissan and Foley & Lardner, Nissan's prelitigation investigation documents, and invalidity documents.

Again, the Federal Circuit has explained the scope of waiver that accompanies a defendant's

11

reliance on an advice of counsel defense. *Echostar*, 448 F.3d at 1301-02. The court found that an advice of counsel defense triggers a broad waiver extending to all non-trial counsel communications relating to the subject matter of the opinion. *Id.* However, the court held that waiver did not extend to work product not communication to an accused infringer. *Id.* at 1302. In so holding, the court stated that "when an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused." *Id.* at 1304.

Courts applying *Echostar's* "subject matter" waiver have reached different results on the issue of whether waiver of an opinion on one defense (i.e. non-infringement) also triggers a waiver of an opinion of other defenses (i.e. invalidity and unenforceability). Mobile relies on cases which have held the waiver extends to any document or opinion that embodies or discusses a communication to or from the client concerning all defenses to willfulness. On the other hand, Nissan relies on a case from this district, wherein the court has held that the waiver extends only to the issues specifically addressed in the advice of counsel opinion. *See Autobytel, Inc. v. Dealix Corp.*, 455 F.Supp.2d 569 (E.D. Tex. 2006).

The above-quoted portion of *Echostar* may seem to hold that the privilege waiver is not limited to the particular nature of the advice of counsel defense, here, infringement, but waives attorney-client communications about validity and enforceability as well. However, as discussed in *Autobytel*:

> The purpose of the advice-of-counsel privilege waiver is to allow an inquiry into the infringer's state of mind regarding the infringer's reasonable reliance on its advice of counsel. Non-infringement, invalidity, and unenforceability are separate and

> independent defenses to infringement. If a defendant has reasonably relied on ultimately erroneous advice of counsel that a patent is invalid, unenforceable, or not infringed, the advice is evidence that the infringement was not willful.

*Autobytel*, 455 F.Supp.2d at 575.  A court within this district has considered the issue before the Court and found questions of validity and infringement distinct, and that counsel's opinions on validity may be irrelevant to the question of willfulness if the defendant does not claim it relied on advice of counsel on invalidity.

Here, Mobile asserts the facts of this case justify extending the scope of Nissan's waiver to invalidity.  Even though the opinion rendered by Foley & Lardner relates only to the non-infringement of claims 13-16 of the '931 patent, Mobile asks the Court to extend the waiver beyond non-infringement to invalidity for the following reasons.

First, according to Mobile, Mr. Law's handwritten notes indicate that his role was originally not limited to a non-infringement analysis, but also included an invalidity analysis.  Mobile states that after Mr. Law reviewed the Panasonic and Clarion opinions, he only provided a non-infringement report.  Mobile states it is entitled to discover the full scope of Mr. Law's opinions to Nissan, whether or not those were recorded in Mr. Law's July 12, 2007 formal written opinion.

Second, Mobile contends Mr. Law played a key role in Nissan's pre-trial investigation, making privileged documents exchanged between Nissan and Foley & Lardner discoverable.  Third, Mobile asserts Nissan specifically retained Mr. Law to review and comment on the opinion of counsel commissioned by Panasonic, and the formal opinion letter relies upon the same Panasonic technical diagram and declaration offered by Panasonic engineer as does Nissan's non-infringement expert.  According to Mobile, if Mr. Law found Panasonic documents and engineering testimony relevant enough to include in his written opinions, other Panasonic documents circulated with earlier

13

drafts fall within the subject matter of that opinion. Finally, Mobile asserts the final written opinion of counsel produced by Foley & Lardner relates to both non-infringement and prior art, mandating that all documents regarding that subject matter be produced.

Regardless of Mr. Law's role, any communications and communicated work product unrelated to the non-infringement opinion have no utility in determining whether Nissan's reliance on Mr. Law's opinion was reasonable. *Autobytel*, 455 F.Supp.2d at 575. Additionally, while the '069 patent is a continuation of '931 patent, Nissan did not waive privilege as to '069 patent. There is no evidence the '931 patent and the '069 patent are tied together. *Autobytel* provides that the scope of the waiver is limited to scope of the opinion produced, and Nissan is relying on the Foley & Lardner opinion of no literal infringement of the '931 patent.

In addition, the Court is not convinced the Foley opinion "relates to" prior art as urged by Mobile. According to Nissan, Mr. Law's reference to U.S. Patent 5,243,640, issued to Ford in September of 1993, was an attempt to describe the state of the art at the time the '931 patent was prosecuted. Nissan states this reference was part of Mr. Law's infringement analysis under the doctrine of equivalents. What's more, Nissan states the only infringement at issue in this lawsuit is literal infringement; infringement under the doctrine of equivalents is thus irrelevant.

Mobile is not entitled to documents regarding Nissan's in-house investigation of the '931 patent unrelated to non-infringement. Again, Nissan has produced all of its in-house documents relating to the subject matter of the opinion of counsel upon which it relies to defend against charges of willful infringement. Specifically, Nissan has provided Mobile with documentation regarding the guidelines of the patent investigation, communications with in-house counsel and outside counsel regarding the guidelines, several specification tenders detailing several systems incorporated into

Nissan vehicles, manuals detailing the function of the Mobile Entertainment System, and the communications between Mr. Law and Nissan relating to issues of infringement/non-infringement.

Mobile seeks more, asserting Mr. Law "played a key role in Nissan's pretrial investigation and that documents evidencing this type of prelitigation conduct should be produced."[4]  Regardless of Mr. Law's role in a pre-trial investigation, any communications or communicated work product that are unrelated to the non-infringement opinion of claims 13-16 of the '931 patent are irrelevant in determining whether Nissan's reliance on Mr. Law's opinion was reasonable.  *Autobytel*, 455 F.Supp.2d at 575.

In sum, the Court does not find Nissan's waiver regarding non-infringement includes all defenses to willfulness or that Nissan must produce all privileged Nissan documents regarding willful infringement.  This portion of Mobile's motion is **DENIED**.

### IV.  MOTION TO EXCLUDE MATERIALS DISCLOSED OUT OF TIME

**A.      Mobile's assertions**

In its second motion, Mobile moves the Court for an Order striking from evidence and precluding from use at trial numerous documents first produced by Nissan after the close of fact discovery, summary judgment briefing, and/or expert reports.  Mobile asserts Nissan continues to produce documents piecemeal beyond the end of discovery and the disclosure of initial expert testimony. According to Mobile, Nissan has attempted to introduce and rely upon several documents that it refused to produce to Mobile until after expert reports were served.  Mobile requests the late-produced documents be stricken from evidence and any use by Nissan in this case.

Specifically, Mobile requests the Court exclude the following documents: (1) Nissan's

---

[4] Mobile's mot. at pg. 11.

production of documents labeled as "CLA00001-CLA001712;" (2)  Nissan's production of documents labeled as "013767-013843;" and (3) Nissan's production of documents labeled as "PAN001850-002249." Mobile requests the Court disregard each of these documents in consideration of the parties' dispositive motions and preclude Nissan and its experts from introducing, mentioning, referencing or relying upon at trial any of the aforementioned documents.

At the hearing on Mobile's motion, Nissan addressed the three categories of documents, how they were obtained, and how they were produced.  According to Nissan, both sides have produced documents out of time.

**B.      Applicable Law**

Federal Rule of Civil Procedure 16(b) provides as follows: "A schedule shall not be modified except upon a showing of *good cause* and by leave of the district judge or, when authorized by local rule, by a magistrate judge."  (Emphasis added).  The Fifth Circuit has stated four factors trial courts must consider when determining whether good cause exits to allow a deviation from the court's scheduling order: (1) the explanation for the failure to [complete the discovery within the deadline]; (2) the importance of the [modification of the deadline]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice.  *Reliance Ins. Co. v. The Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir.1997); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).  With this standard in mind, the Court considers each of the categories below.

**C.      Discussion**

**1.      Nissan's production of documents labeled as "CLA00001-CLA001712"**

Regarding Clarion documents labeled CLA00001-01712, there was a several month delay

16

between Nissan's receiving the documents and producing the documents. According to Nissan's counsel, he was in communication with Mr. Hill, the primary lawyer for Mobile at the time, regarding Clarion's license. Nissan's counsel and Mr. Hill were discussing whether Mr. Hill would drop the Clarion products. Given these conversations, Nissan did not produce the documents at that time. In May of 2007, Mr. Hill's co-counsel informed Nissan that the Clarion products would not be dropped. However, Nissan did not produce the documents until July of 2007.

In assessing good cause, the trial court primarily considers the diligence of the party seeking to alter the existing schedule. *See Deghand v. Wal-Mart Stores, Inc.*, 904 F.Supp. 1218, 1221 (D.Kan.1995). The party's explanation for seeking relief from the schedule must demonstrate that it could not have met the deadline despite its diligence. Nissan's explanation does not show this.

Not only has Nissan failed to demonstrate good cause for its failure to timely produce the Clarion documents labeled 00001-01712, but the Court is also not convinced of the importance of the documents. Thus, the Court is of the opinion this portion of Mobile's motion should be **GRANTED.** The Court will disregard each of these documents in consideration of the parties' dispositive motions. Nissan and its experts are precluded from introducing, mentioning, referencing or relying upon at trial any of the aforementioned documents.

### 2.    Nissan's production of documents labeled as "013767-013843"

According to Nissan, the Nissan documents labeled 013767-013843 are additional survey materials produced in supplementation to a specific discovery request by Mobile. At the hearing, Nissan's counsel explained that it did not occur to Nissan to produce the requested documents earlier, and Nissan produced the documents as soon as they were collected after requested by Mobile. Nissan states it is not relying on the documents and does not object to an order excluding documents

17

labeled 013767-013843.

Thus, the Court is of the opinion this portion of Mobile's motion should be **GRANTED.** The Court will disregard each of these documents in consideration of the parties' dispositive motions. Nissan and its experts are precluded from introducing, mentioning, referencing or relying upon at trial any of the aforementioned documents.

### 3.    Nissan's production of documents labeled as "PAN001850-002249"

Regarding documents labeled PAN001850-002249, Mobile finds it difficult to believe Nissan did not have access to the challenged documents within the fact discovery deadline.  According to Mobile, Nissan admits to ongoing discussions with its supplier Panasonic about the accused devices and their alleged infringement of the '931 patent (and the closely related '069 continuation-in-part patent) since at least April of 2004, and now claims to actually be an effective "joint" defendant with Panasonic. Mobile contends the fact that Nissan claims in this case to be party to a "joint defense agreement" with Panasonic, which agreement was entered into over a year ago, belies any potential suggestion by Nissan's counsel that it could not control the pace by which documents came from Panasonic

At the hearing, Nissan explained that it issued subpoenas to Panasonic regarding documents in January of 2007.  Even though Nissan admits it had been communicating with Panasonic, Nissan states there is not an open-door policy regarding documents.  Nissan thought it had received all the requested documents in February of 2007.  But, during its work with Dr. Mercer during the summer on Dr. Mercer's non-infringement expert report, Dr. Mercer requested additional documents.  Nissan then requested additional documents from Panasonic. According to Nissan, Panasonic documents 1850-1855 were produced to Nissan on August 7, 2007, and Panasonic documents 1856-2249 were

18

produced to Nissan several weeks later. Nissan states it produced the documents to Mobile as soon as it received them.

Nissan's explanation demonstrates Nissan could not have met the deadline despite its diligence. Nissan issued a subpoena to Panasonic within the discovery deadline, but it did not receive the documents until after deadline. Additionally, Nissan has demonstrated the importance of documents. The Panasonic documents are important helped Dr. Mercer understand the differences between 2007 vehicle and prior models.

However, Mobile asserts it has been prejudiced by Nissan's late production of these Panasonic documents. According to Mobile, it was not able to take the depositions of Panasonic, Clarion, and Nissan fact witnesses who participated directly or indirectly in testing performed by Dr. Mercer. In addition, Mobile states the Panasonic documents were not furnished to Mobile's experts.

Assuming Mobile has been prejudiced by the delay in Nissan's production, the Court considers the availability of a continuance to cure such prejudice. Nissan asserts the Panasonic documents were produced in advance of the relevant depositions, curing any prejudice that may have existed. What's more, the trial in this case has been continued to January of 2008, providing time to cure any prejudice. The Court will allow Mobile to supplement its expert reports utilizing documents labeled PAN001850-002249, if necessary, within twenty days from the date of entry of this Order. This portion of Mobile's motion is **DENIED**.

Based on the foregoing, it is

**ORDERED** that Plaintiff's Motion to Compel Privilege Log Documents (Docket Entry # 159) is **GRANTED IN PART and DENIED IN PART** as specified in Section III. It is further

**ORDERED** that Plaintiff's Motion to Exclude Materials Disclosed Out of Time (Docket

Entry # 161)  is **GRANTED IN PART and DENIED IN PART** as specified in Section IVC.

    **SIGNED this 14th day of November, 2007.**

                                      CAROLINE M. CRAVEN
                                      UNITED STATES MAGISTRATE JUDGE

**From:** Patricia L. Peden [mailto:ppeden@pedenlawfirm.com]
**Sent:** Thursday, November 15, 2007 11:55 AM
**To:** 'Caracappa, John'; Jeff Patterson; Jeff Cox; Thomas Adair
**Cc:** 'Patton, Nick'; egm@hkw-law.com; mlong@texarkanalaw.com
**Subject:** Judge Craven's Order Re MMS's Motion to Compel Priv. Log Docs.
John and Jeff:

As I'm sure you are aware, Judge Craven issued an order yesterday regarding MMS's motion to compel documents on Nissan's privilege log.  Judge Craven ruled that Nissan need not produce documents that relate only to infringement of the '069 patent, and not the '931 patent.  It is impossible to tell from Nissan's privilege log, which documents are being withheld or redacted because they contain information regarding the '069 patent.  Can you please identify for me by Monday of next week which documents will continue to be withheld by Nissan as concerning the '069 patent.

Judge Craven also ruled that Nissan cannot withhold infringement related documents based on a claim of common interest defense privilege.  Many of the documents on Nissan's privilege log are communications from Nissan employees to other Nissan employees, but have been withheld by Nissan under a CID claim.   While MMS has long maintained that those documents cannot be the subject of a CID, Judge Craven's order removes any doubt that those documents should be produced. Please confirm that Nissan will be producing those documents.

The Court's order addressed the Panasonic and Clarion opinions of counsel because those were the only opinion letters that MMS could identify from Nissan's privilege log and correspondence.  Please confirm that Nissan has no other infringement-related opinions of counsel.

Finally, MMS would like to set a date to take the depositions of Mr. Law and a Nissan witness regarding reliance on advice of counsel approximately a week after receiving the documents that the Court ordered Nissan to produce.  Please check with Mr. Law and Nissan and provide us with available dates.


Regards,
Patty

**From:** Patricia L. Peden [mailto:ppeden@pedenlawfirm.com]
**Sent:** Wednesday, November 21, 2007 11:55 AM
**To:** 'Jeff Cox'
**Cc:** 'Patton, Nick'; 'Eric Maurer'; 'mlong@texarkanalaw.com'
**Subject:** Deposition of Nissan re reliance on opinion of counsel



Depo notice
re advice ...

Jeff:
During our email correspondence last week, you requested that I provide you with a list of the
willfulness topics for which MMS will seek to depose a Nissan representative.  Attached is a draft Rule
30(b)(6) notice.  Please review and let me know if Nissan is willing to provide a witness.  If not, MMS will
move for leave of court to take this deposition.  Please note that this document is a draft and although I
don't anticipate making any additional changes (other than correcting typos that are likely to be in this
draft), MMS reserves the right to change this notice before it is filed with the Court.  Also, MMS would
like to take the deposition of Mr. Glenn Law soon after the Nissan deposition is taken.  Please let me
know if Nissan is willing to offer Mr. Law for deposition.
Thanks,
Patty

# STEPTOE & JOHNSON LLP

### ATTORNEYS AT LAW

John M. Caracappa
202.429.6267
jcaracappa@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

December 4, 2007

Via EMAIL AND OVERNIGHT DELIVERY

Mr. Nicholas H. Patton
Patton, Tidwell & Schroeder, L.L.P.
P.O. Box 5398
4605 Texas Boulevard
Texarkana, Texas 75505-5398

Re:    *Mobile Micromedia Solutions LLC v. Nissan North America, Inc.*

Dear Nick:

Pursuant to the Court's November 14th, 2007 Order (Doc. No. 289), enclosed please find (1) the opinion of counsel relating to the non-infringement of claims 13-16 of the '931 patent prepared by Panasonic and disclosed to Nissan ("Panasonic Opinion"), (2) documents relating to the Panasonic Opinion within ninety days before or after the date on which Nissan received this opinion, and (3) documents relating to the opinion prepared by Clarion and disclosed to Nissan within ninety days before or after the date on which Nissan received this opinion. The Clarion opinion was produced on July 13, 2007 and can be located at bates range 910.1-P – 910.5-P, as reflected in the privilege log entry No. 804. Nissan has amended its privilege log as well as the Foley & Lardner privilege log to reflect this production. These documents are attached as NNA's Revised Amended Second Supplemental Privilege Log and Foley & Lardner's Amended Privilege Log, respectively.

To the best of Nissan's knowledge, after a reasonable search, Nissan does not possess any other opinions related to the non-infringement of claims 13-16 of the '931 patent.

Please feel free to contact me if you have any questions.

STEPTOE & JOHNSON LLP

Mr. Nicholas H. Patton
December 4, 2006
Page 2

Sincerely,

John M. Caracappa

Enclosures

# STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW

John M. Caracappa
202.429.6267
jcaracappa@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

December 31, 2007

Via EMAIL AND OVERNIGHT DELIVERY

Mr. Nicholas H. Patton
Patton, Tidwell & Schroeder, L.L.P.
P.O. Box 5398
4605 Texas Boulevard
Texarkana, Texas 75505-5398

Re:    *Mobile Micromedia Solutions LLC v. Nissan North America, Inc.*

Dear Nick:

Enclosed please find documents that Nissan is producing pursuant to the Court's December 27th, 2007 Order (Doc. No. 307). Nissan does not admit that the enclosed documents fall within the scope of this Order, but is producing them out of an abundance of caution. By producing these documents, Nissan is not waiving any privilege with respect to documents that relate to the '069 patent, non-accused Nissan products, and with respect to documents that do not relate to the alleged infringement of claims 13-16 of the '931 patent.

To the best of Nissan's knowledge, after a reasonable search, Nissan does not possess any other documents or opinions related to the non-infringement of claims 13-16 of the '931 patent. However, as you know, Nissan is closed for the holiday season this week. We will confirm that Nissan has produced all documents pursuant to the Court's December 27th Order as soon as Nissan reopens for business.

We have also enclosed a copy of Nissan's Revised Amended Third Privilege Log that reflects the production of these documents.

Please feel free to contact me if you have any questions.

Sincerely,

John M. Caracappa

Enclosures

-----Original Message-----
From: Jeff Patterson [mailto:jpatterson@hdbdk.com]
Sent: Saturday, December 15, 2007 7:12 PM
To: Nick Patton; 'Caracappa, John'; 'Jeff Patterson'
Cc: 'Patricia L. Peden'; mlong@texarkanalaw.com
Subject: RE:

Hi Nick. Foley is quashing the Law notice.  So that will not happen Friday
as I thought.  Steptoe is addressing the 30b6.

-----Original Message-----
From: "Nick Patton" <nickpatton@texarkanalaw.com>
To: "'Caracappa, John'" <jcaracappa@steptoe.com>; "'Jeff Patterson'"
<jpatterson@hdbdk.com>
Cc: "'Patricia L. Peden'" <ppeden@pedenlawfirm.com>;
"mlong@texarkanalaw.com" <mlong@texarkanalaw.com>
Sent: 12/15/07 4:26 PM
Subject:


Guys:  As you know the 30 b 6 depo is noticed for thursday (I think) and as
I have said in phone calls and e-mail I am willing to change it to Jan 4 but
I have to know that he will come here.  I also have requested that John give
me his objections or call me about the objections to the Law notice.  Time
is running out and if I don't hear tomorrow, I will proceed with the depos
as noticed.


Patton, Tidwell & Schroeder, LLP
4605 Texas Blvd.
Texarkana, TX 75503
903-792-7080